CHURCH OF ST. GEORGE OF GLENCOE *vs.* SUN FIRE OFFICE INSURANCE
CO. OF LONDON.

Argued May 18, 1893.    Affirmed July 14, 1893.

**Condition in a Policy as to Other Insurance.**

The policy of insurance here sued on contained a condition that it should
be void if the assured (plaintiff) should procure other insurance on the
property. After the issuing of this policy the plaintiff mortgaged the
premises to secure a loan then made, and covenanted in the mortgage to
cause the property to be insured, and that the policy should be made pay-
able to and delivered to the mortgagee. The mortgagee was also thereby
authorized to procure insurance at plaintiff's expense in case of the de-
fault of the latter so to do. Before the delivery of the mortgage the mort-
gagee procured such insurance (assumed to cover the interest of the
owner) without the knowledge or authority of the plaintiff, and after the
delivery of the mortgage the mortgagee by mail informed the plaintiff
merely that he had procured insurance at the expense of the latter, with-
holding the cost of it from the money loaned. The plaintiff was not in-
formed and did not inquire whether the insurance covered its interest as
owner or only the interest of the mortgagee, which would not constitute
a breach of the policy in suit. *Held* (1) that the plaintiff is not to be deem-
ed to have procured the additional insurance; (2) that the circumstances
did not justify the conclusion that by acquiescence or ratification the plain-
tiff had consented to or adopted the insurance as one covering its interest
as owner, the plaintiff having no knowledge that such was the nature of
the insurance, and owing no duty to this defendant to inquire as to the
terms of the contract made between other parties.

Appeal by defendant, the Sun Fire Office Insurance Company
of London, England, from a judgment of the District Court of Ram-
sey County, *W. D. Cornish*, J., rendered November 19, 1892, against
it for $5,191.15.

The plaintiff, the Church of St. George at Glencoe, a religious
corporation, on August 17, 1891, obtained of defendant a policy,
whereby it insured plaintiff for one year in the sum of $5,000
against loss by fire on its church building at that place. The
building was burned on March 21, 1892, and plaintiff sustained
$15,500 damages. It gave notice, made proof of loss, and brought
this action to recover of defendant on its policy. Defendant an-
swered that the policy contained a clause that it should be void

if the insured should make or procure any other contract of insurance on the property, and that the plaintiff had on February 17, 1892, procured other insurance in the Atlas Insurance Company and in the Orient Insurance Company. Plaintiff replied that it had not procured, applied for or received such other insurance. The facts as they were shown by the evidence at the trial are stated in the opinion. When the evidence was all in, the Judge instructed the jury to return a verdict for the plaintiff for the $5,000 and interest. This was done, and judgment was entered thereon. Defendant appeals.

*Lusk, Bunn & Hadley, F. C. Stevens,* and *Emanuel Cohen,* for appellant.

The only question is: Was the later insurance the insurance of the plaintiff? It in form covered the property and plaintiff's interest therein. It was plaintiff's insurance if procured with its authority, or if its procurement was adopted or ratified by plaintiff. If it was legal insurance of the plaintiff on its interest it clearly violated defendant's policy. Plaintiff's case rests wholly on the claim advanced, that the mortgagee was not its agent to take out the later policies, and that his act in so doing was never confirmed or ratified by plaintiff. As the facts are not in the least in dispute, this must, we think, be a question of law. The plaintiff knew that some form of policy had been taken out on the property, by the mortgagee, under the stipulations of the mortgage. It paid for it and adopted it. The plaintiff comes directly within the principle settled by this court in the case of *Ehrmanntraut* v. *Robinson,* 52 Minn. 333. That rule is this: When a principal knows an unauthorized contract has been made by his agent in his behalf and accepts the contract without further inquiry, and without knowing the terms or form of the contract, he ratifies. His want of knowledge of all the facts will not excuse him, because he knew enough facts to put him upon further inquiry, which would have at once brought to light all the facts. The cases of *Titus* v. *Glens Falls Ins. Co.,* 81 N. Y. 410, and *Carpenter* v. *Continental Ins. Co.,* 61 Mich. 635, are perhaps not reconcilable with *Gillett* v. *Liverpool & L. & G. Ins. Co.,* 73 Wis. 203; but the Wisconsin case goes much farther than any claim we need to advance here,

and the New York and Michigan cases are reconcilable with every proposition defendant maintains.

*C. D. & Thos. D. O'Brien,* for respondent.

Plaintiff did not ratify the act of the mortgagee in taking out this last insurance. This claim of ratification is predicated upon an item occurring in the accounting for the loan, the item being "Amt. paid Weed & Lawrence for insurance, $150," and the sentence in the letter of Cochran & Walsh saying, "We beg to inclose herewith statement of your loan showing payment of insurance bill." This information was mailed to plaintiff on February 26th. Just when it was received the case does not show. The fire took place on March 21st, less than a month after the receipt of this letter and account. This does not constitute a ratification because it contained not enough information to put plaintiff upon inquiry. If it did do so, then sufficient time had not elapsed to charge plaintiff on the ground of failure to make any inquiry. The other insurance must be procured by the policy holder for his benefit. Insurance procured by a third party covering and affecting only the interest of such third party in the property, is not other insurance within the provisions of this policy. *Titus* v. *Glens Falls Ins. Co.,* 81 N. Y. 410; *Carpenter* v. *Continental Ins. Co.,* 61 Mich. 635; *Rowley* v. *Empire Ins. Co.,* 36 N. Y. 550; *Jackson* v. *Massachusetts Mut. Fire Ins. Co.,* 23 Pick. 418; *Nichols* v. *Fayette Mut. Fire Ins. Co.,* 1 Allen, 63; *Tyler* v. *Ætna Fire Ins. Co.,* 12 Wend. 507; *Woodbury Sav. Bank* v. *Charter Oak Ins. Co.,* 31 Conn. 517.

The rule in *Ehrmanntraut* v. *Robinson,* 52 Minn. 333, has no application to this case. In that case the parties entered under an unauthorized lease, occupied the building thereunder, and enjoyed all the benefit of the contract which had been made in their behalf. In this case the opposite took place. The plaintiff refused any benefits under the contract made, and declined to recognize its existence.

DICKINSON, J. This is an action upon a policy of fire insurance, by which, in August, 1891, the defendant insured the church of the plaintiff at Glencoe for one year in the sum of $5,000. The building was burned in March, 1892. The defense is that the conditions of

the policy respecting other insurance were violated.    The policy, in the form prescribed under the laws of this state, contained this provision: . "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if the assured now has or shall hereafter make or procure any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy."    Certain other insurance was expressly authorized, and was procured by the plaintiff.    Afterwards, in February, 1892, the plaintiff negotiated a loan of $5,000, to be secured by mortgage on this property, from one Barrett, residing in the state of New York. The business was conducted on the part of Barrett by Messrs. Cochran & Walsh, of St. Paul, in this state; and their communications with the plaintiff, so far as they are important, were through the mail.    The mortgage was acknowledged on the 16th of February,. recorded in McLeod county on the 19th, and not until the latter date, at least, is it to be regarded as having taken effect as by delivery.    The mortgage contained covenants to the effect that the mortgagor would, until the debt should be paid, cause the building to be, and keep the same, insured against loss by fire in at least the sum of $5,000, by policy or policies of insurance in some insurance company or companies approved by the mortgagee; all policies of insurance thereon to be made payable in case of loss to, and be deposited with, the mortgagee; and that, if the mortgagor should fail so to do, the mortgagee might, without notice, effect such insurance, and the money paid therefor should become a part of the mortgage debt.    As we have said, this mortgage does not appear to have taken effect by delivery before February 19th.    But on the 17th of that month, Cochran & Walsh, the agents of the mortgagee, procured two policies of insurance to be issued, one by the Atlas Insurance Company, and the other by the Orient Insurance Company, each for the sum of $5,000, in terms insuring the plaintiff, in respect to this property, for the period of five years.    Attached to those policies, respectively, and forming parts thereof, were clauses providing that the loss or damage, if any, should be payable to Barrett, as mortgagee, as his interest might appear.    There was a mortgage subrogation clause, the particular provisions and effect of which we do not deem it necessary to consider.    Cochran & Walsh paid $150, the premiums for such insurance, and withheld that sum from the

amount loaned by Barrett to the plaintiff. In procuring such insurance they acted as agents for Barrett, and they received and always retained the policies for him. On the 26th of February, Cochran & Walsh, who had then received the mortgage, already recorded, wrote to the representative of the plaintiff, inclosing a statement of various charges against the plaintiff on account of matters connected with the making of the loan, among which was the item, "Amount paid Weed & Lawrence for insurance, $150.00." The letter referred to this statement as "showing payment of insurance bill." In this letter was inclosed, also, a check for the remainder of the $5,000 loaned, after deducting the charges there stated. This communication was received by the plaintiff. No response appears to have been made. In no other way was any notice given to the plaintiff that the mortgagee, or his agents, had effected the insurance in the Atlas and Orient Companies; and the plaintiff does not appear to have been informed as to the terms or form of such insurance. The court directed a verdict for the plaintiff. On this appeal by the defendant from the judgment the case is presented by a bill of exceptions from which we have drawn the foregoing statement of facts.

We will assume, in favor of appellant, (without deciding as to the effect of the subrogation clause,) that the policies of the Atlas and Orient Companies should be construed as insuring not merely the interest of the mortgagee, but also that of the plaintiff as the owner; so that, if the latter is to be deemed to have procured, or to have accepted the benefit of, such insurance, it would violate the above-recited condition of the policy in suit, and hence avoid the same. Such, however, would not be the effect of any contract of insurance which might have been procured by the mortgagee insuring only his own distinct and separate interest as mortgagee, so that payment to him under the policy would not have the effect to extinguish the mortgage debt, but only to subrogate the insurance company to his rights as creditor of the plaintiff. *Carpenter* v. *Providence W. Ins. Co.*, 16 Pet. 495, 501; *Ætna Fire Ins. Co.* v. *Tyler*, 16 Wend. 385, 399; *Guest* v. *New Hampshire Fire Ins. Co.*, 66 Mich. 98, (33 N. W. Rep. 31;) *Carpenter* v. *Continental Ins. Co.*, 61 Mich. 635, (28 N. W. Rep. 749;) *Fox* v. *Phenix Fire Ins. Co.*, 52 Me. 333.

We come, then, to consider whether the plaintiff can be deemed

to have procured the additional insurance, covering its interest as owner, within the meaning of the condition in the policy in suit. Without further comment upon the facts above stated, it is to be said that the plaintiff did not itself procure such insurance, nor, when Cochran & Walsh procured it, had the plaintiff authorized them to do so. Without any breach of obligation on the part of the plaintiff to procure insurance, and even before the delivery of the mortgage creating such an obligation, the insurance had been procured by the agents of the mortgagee, without the previous knowledge or consent of the plaintiff. Hence, when that insurance was effected, it could not be said to have been procured by the plaintiff. Its action, consent, or authority were not involved in the transaction. But subsequent ratification would have had the same effect as prior authority. The purpose of the condition in the policy in suit was to limit the amount of insurance, so that the plaintiff should continue to have an interest in the preservation of the property. *Funk* v. *Minnesota F. M. Fire Ass'n*, 29 Minn. 347, 352, (13 N. W. Rep. 164.) Such being the purpose, it could make no substantial difference whether the plaintiff should directly procure other insurance, or should ratify and adopt, for its own benefit, the action of another person who should have procured insurance in its name, and in terms beneficial to it. But we think the case falls short of showing any such ratification as would have justified the inference that the plaintiff had consented to additional insurance of its interest in the property as owner. It is to be conceded that the plaintiff, when informed by the letter of the agents of the mortgagee that they had effected an insurance, must have understood that they had done this for the protection of their principal, the mortgagee; and the failure of the plaintiff to express any dissent may have justified the inference that it consented to such an insurance,—that is, an insurance for the benefit of the mortgagee. But the inference that the plaintiff consented to or adopted or ratified the additional insurance as one covering its interest as owner, with the legal effect of avoiding the insurance which it had previously procured for its own benefit, is not justified, unless, at least, the plaintiff either knew that such was the nature of the insurance, or had such notice of the fact that by reason of some duty towards this defendant it was required to

make inquiry concerning it. As we have said, the plaintiff did not know the fact; and although it might have had reason to suppose it possible, or even probable, that the insurance effected for the benefit of the mortgagee might be in such form as to also inure to the benefit of the plaintiff, yet the plaintiff was under no obligation or duty, as respects this defendant, to make inquiry respecting that matter. The insurance had been procured from other companies, not by the plaintiff, nor by its authority, but by a third party. The mere failure of the plaintiff, under the circumstances, to repudiate the action of Cochran & Walsh, acting as agents for, and for the benefit of, another person, the mortgagee, would not amount to an acceptance of the contract so far as it might constitute an insurance of its interest. If the plaintiff was willing to pay for the insurance for the benefit of the mortgagee, as in fact it agreed to do, its relations to the mortgagee did not require it to make inquiry as to the form of the policies. It was enough that the mortgagee who had taken them out was satisfied with them. Nor did the circumstances make it the duty of the plaintiff towards this defendant, a stranger to those contracts, to inquire and see to it that the subsequent insurance was not in such a form that, if the plaintiff should consent to or ratify the same, it (plaintiff) might claim some benefit therefrom. It is enough that the plaintiff neither procured such an insurance, nor authorized it, nor knew that it had been procured; nor ever sought or contemplated, so far as appears, any benefit to itself therefrom. The burden of proving ratification was on the defendant, and we think that the case falls short of showing it. Hence we conclude that the case did not show any violation of the condition upon which the defense rests, and that the court was right in directing a verdict for the plaintiff.

Judgment affirmed.

VANDERBURGH, J., did not sit, being absent by reason of sickness.

(Opinion published 55 N. W. Rep. 909.)