CAMDEN FIRE INS. ASS'N v. SUTHER-
LAND.   (No. 1829.)*

(Court of Civil Appeals of Texas.   El Paso.
Nov. 25, 1925.   Rehearing Denied
Dec. 17, 1925.)

1. **Insurance ⬅⮞378(3)—Knowledge of insurance agents with general authority knowledge of insurer.**

Insurance agents having general authority to issue policies stand in place of insurer itself, and whatever knowledge they possessed with respect to additional insurance was knowledge of insurer.

2. **Insurance ⬅⮞379(1)—Insurer held not entitled to escape liability by reason of incorrectness of warranty as to other insurance, where facts within knowledge of general agent.**

Where general agents of insurer had as much knowledge as insured as to insurance taken out by mortgagee, and promised to ascertain facts and fill in application accordingly, insurer could not avoid its liability because of incorrectness of warranty against other insurance.

3. **Insurance ⬅⮞146(3)—Provisions inserted by insurer to defeat insurance strictly construed against insurer.**

Provision inserted by insurer, in its policies, which go to defeat, diminish, or forfeit insurance, will be strictly construed against insurer, so that such defense is not available unless plain language or obvious spirit of defeasance clause is clearly made out.

4. **Insurance ⬅⮞336(3)—Clause prohibiting procurance of other insurance by insured held not violated by mortgagee taking out insurance for his own benefit.**

Provision in fire insurance policy that it shall be void if insured procures other insurance held not violated by mortgagee taking out policy in his own independent right and for his own benefit, to which insured was not a party, and which in no way inured to insured.

5. **Insurance ⬅⮞140½—One having insurable interest in property may insure property in whatever amount and in as many companies as he desires.**

So long as person has an insurable interest in property, he may insure property in what-
ever amount he desires, and in as many companies as he desires, so long as he can find companies who will issue such policies, and is not restricted to insuring value of property.

6. **Insurance ⬅⮞336(2)—Chattel mortgage clause held not to make mortgagee agent of mortgagor in procuring insurance.**

Clause in chattel mortgage, authorizing mortgagee to take out insurance with loss payable to mortgagee, held not to make mortgagee agent of mortgagor in taking out insurance for its own benefit and in its own name, nor was notice to mortgagee notice to insured.

7. **Insurance ⬅⮞581—Where mortgagee released its mortgage, mortgagor could recover.**

In action by chattel mortgagor on policy, it was his duty to show that, on insurer paying him for loss, it would not also be called on to pay mortgagee, under clause making loss payable to it, but mortgagee having released its mortgage, mortgagor was entitled to recover.

8. **Chattel mortgages ⬅⮞129—Mortgagor owns legal title.**

The chattel mortgagor owns legal title, especially where possession has been delivered.

9. **Insurance ⬅⮞581—Mortgage debt not discharged by mortgagee insuring property for its own benefit and collecting indemnity on destruction of property.**

That chattel mortgagee took out policy for which it paid, and which it collected on destruction of mortgaged property, does not inure to mortgagor's benefit nor discharge debt which mortgagor owes to mortgagee.

10. **Insurance ⬅⮞646(2)—Burden on insurer to show existence of other insurance diminishing policy.**

Burden is on insurer, alleging, in action on policy, that there was other concurrent insurance on property making concurrent insurance clause applicable to show such other insurance.

11. **Insurance ⬅⮞336(3)—Insurance taken out by mortgagee held not "concurrent insurance" within meaning of mortgagor's policy.**

Insurance taken out by mortgagee for its own benefit and in its own name to protect its lien held not "concurrent insurance" within meaning of policy sued on by mortgagor, so as to result in diminishing mortgagor's policy under concurrent insurance clause.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Concurrent Insurance.]

Appeal from District Court, El Paso County; P. R. Price, Judge.

Action by W. A. Sutherland against the Camden Fire Insurance Association. Judgment for plaintiff, and defendant appeals. Affirmed.

E. G. Senter, of Dallas, for appellant.

Lea, McGrady, Thomason & Edwards, of El Paso, for appellee.

---

⬅⮞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted February 10, 1926.

HIGGINS, J. Appellant issued to appellee a fire insurance policy for the term of one year, through its local agents, Coles Bros. & Saunders, dated October 8, 1924, in the sum of $10,000, upon a cotton gin. On December 4, 1924, the property was totally destroyed by fire. This suit was to recover upon the policy. The case was tried without a jury upon certain agreed facts supplemented by additional evidence, and resulted in judgment against appellant for the full amount of the policy.

The trial court's findings of fact are as follows:

"In making findings of fact, I deem it unnecessary to include either the agreed statement of facts signed by the attorneys and filed in the cause, or the terms of the policy sued on and read in evidence, or the paragraph from the chattel mortgage read in evidence, or the application for insurance read in evidence, as these documents are all in writing and speak for themselves.

"I. I find that defendant's agent, Saunders, who issued the policy sued on, solicited such insurance of the plaintiff, and, having present a blank printed application in use by defendant, the same was read over and discussed by the plaintiff and Saunders, and on such occasion plaintiff informed the agent that the Murray Company, who held a mortgage against the gin machinery, had taken out some kind of insurance to protect its interest as mortgagee with some insurance company, through the insurance broker firm of ———, but that he (the plaintiff) did not know the full nature of such insurance, nor whether the same was still in force, and therefore that he (the plaintiff) could not answer definitely whether there was any other insurance on the property or not, and therefore that he was not in a position to answer the question in the application as to whether there was any other insurance. On this occasion the agent promised to investigate this matter and to fill in the application accordingly, so that the same would not conflict with the facts. Thereupon the plaintiff, by agreement of himself and the agent, signed the application in blank and delivered it to the agent, who promised to take the same back to the agent's office and fill it in properly; the plaintiff having also given the agent all other information which he then had in his mind as fully and truthfully as he knew the same. Thereupon the agent carried the application to his office and filled in the same and issued the policy to plaintiff, with a copy of the application attached, without further participation on the part of the plaintiff. After the policy was issued, the same was delivered to the plaintiff, and the agent collected the premium, but that as a matter of fact the plaintiff did not examine the application or the copy of which that was attached to the policy, and did not in fact know what answers the agent had written in the application. In this transaction I find that no fraud or misrepresentation was intended, either by the plaintiff or by the agent, and in fact that no misrepresentation was made within the meaning of the printed question in the application nor within the meaning of the printed provisions in the policy; that the agent of the company had sufficient knowledge and

was put on sufficient notice through this conversation with the plaintiff as that it should be held that the company issued the policy sued on with a knowledge of such insurance as the Murray Company was carrying, and that the defendant waived any objection it might otherwise have on account of the Lloyd's policy of indemnity which the Murray Company held.

"II. I find as a fact that the Lloyd's policy held by the Murray Company was not 'other insurance' within the meaning either of the question in the application or within the provisions of the policy sued on.

"III. I find that the Lloyd's policy carried by the Murray Company was not concurrent insurance within the meaning of the policy sued on, providing that the defendant company would only be liable for its pro rata part of the loss where other insurance was being carried by the insured.

"IV. I find that the act of the Murray Company in carrying the indemnity insurance with the Lloyd's was acting for itself solely at its own expense, and was not attempting to exercise the power given to it by the plaintiff under the chattel mortgage, the insurance paragraph of which mortgage has been read in evidence, providing that, if the mortgagor should fail to carry insurance, with loss clause payable to the Murray Company, that it might take out such insurance and charge the costs thereof to the mortgagor, etc. However, such mortgage, although bearing date July 2d, was in fact not executed until July 9, 1924."

It is shown by the agreed facts as follows:

"The Camden Fire Insurance Association is a corporation duly incorporated, having an office and place of business in El Paso county, Tex., and has local agents representing it in said county in the person of Coles Bros. & Saunders, a copartnership composed of A. P. Coles, Frank Coles, Otis Coles, C. F. Saunders, and John O. Beckley, all residents of El Paso county.

\* \* \* \* \* \*

"IV. The gin plant, consisting of the machinery described in the foregoing paragraph had been purchased by plaintiff prior to October 8, 1924, from the Murray Company, of Dallas, Tex., and on date aforesaid still owed the Murray Company an unpaid balance of $10,000 on said gin plant, and as security for the payment of such indebtedness the Murray Company held a valid mortgage lien against said gin plant.

"V. Prior to October 8, 1924, the Murray Company procured a policy of insurance in the sum of $7,750, to be issued by Lloyds, New York, an association of fire insurance underwriters, acting through Republic Agency, Inc., as attorney, which said policy was issued to 'the Murray Company as mortgagees' and covered only the Murray Company's mortgagee interest in the above described gin plant. The premium on this policy was paid by the Murray Company, and the policy did not cover the interest of W. A. Sutherland as owner of said gin plant. It was in force on October 8, 1924, and at the time the property in question was destroyed by fire as hereinafter set out.

"VI. Prior to October 8, 1924, plaintiff, W. A. Sutherland, received the following letter from the Murray Company of Dallas, Tex.:

" 'The Murray Company,

" 'Manufacturers of Cotton Ginning, Cotton Seed Oil Mill Machinery, and Mill Supplies.

" 'Dallas, Texas, July 2, 1924.

" 'Contracts #13850–1.

" 'Copy.

" 'Mr. W. A. Sutherland, Las Cruces, New Mex.—Dear Sir: Shipments of machinery for Canutillo, Tex., and Vinton, Tex., as shown by the inclosed invoices and as represented by the above-numbered contracts left Dallas on June 30th. * * * Please refer to the attached letter of this date addressed to you, and which is self-explanatory as to the insurance referred to therein. We have instructed Cornwall & Stevens to issue three binders each in the amounts of $7,750 to cover our mortgage interest in each of your three plants above referred to, and to become effective when machinery ceases to be covered by bill of lading. If you desire to secure insurance direct, and will furnish us with policies with loss clause in our favor, we will on receipt of acceptable policies cancel the insurance with Cornwall & Stevens as of the date your insurance becomes effective. In either event, it is necessary that we advise the insurance company as to the dates on which shipments ceased to be covered by bills of lading. Please, therefore, use the inclosed cards in giving us the information thereon desired. Again thanking you for these contracts and trusting shipments reach destination in due time, we are

" 'Yours very truly,

" 'CWC–AS          Collection Department.'

" * * * At the time the policy in question was issued to plaintiff and at all times since Coles Bros. & Saunders were and are defendant's local agents in El Paso county, Tex., with authority to examine the property of applicants for fire insurance and accept risks for defendant and issue policies of insurance in behalf of defendant to such persons as in the opinion of Coles Bros. & Saunders are entitled to insurance, defendant having furnished Coles Bros. & Saunders with blank policy forms signed by defendant's president, attested by its secretary, and effective when filled in and countersigned by Coles Bros. & Saunders.

"XV. After the destruction of the above-described gin plant by fire, Lloyds, New York, paid to the Murray Company on the policy which was issued to it as mortgagee covering only its mortgagee interest the sum of $7,-364.49, and said Murray Company released its mortgage on said property and now makes no claim under the policy sued on."

The appellee testified:

"When I was solicited for this insurance I had purchased and installed two gins known as the Borderland gin and La Union gin. These were purchased from the Murray Company at Dallas and erected at the points mentioned. In the month of October, 1924, while very busy with the operation of the Borderland gin, which is the subject of this suit, I was solicited by the agent of the defendant to take out a policy with them, covering the two plants, La Union and Borderland. I did not accede at first. I was very busy, and had no time to go into the matter, but these gentlemen, who were Mr.

Saunders and Mr. Baldwin, his representative, called on me several times in regard to it, and examined the plant and discussed the matter of rates, made their inspection as to fire risks, etc., and finally I told them that I would insure these two gins with them. Of course, there was a great deal of negotiations and discussions, which I will not repeat unless called upon. They wanted to write me for $15,000 on each of these gins, and stated that the value of the property would easily support that amount of insurance, taking into consideration the three-fourths clause. I told them then, and several times, that I had received information some months before, the particulars of which I was not—were not plain in my mind at the time, as to the contents, etc., that I had this information from the Murray Company, as I recall it, in general terms, that they had placed an insurance policy on these gin plants to cover their mortgage interest in these plants; that I did not know, I was told these insurance—that I did not know whether these policies were still in force, nor the exact dates of them; that I had never asked them to take them out, I had nothing to do with it, I had not had any part in it; that it might be that those policies were still in force, and it might be that they were not, so far as my then information was concerned; that these policies, I had been told by them, were taken out by Cornwall & Stevens, and it would be an easy matter for them or their company to ascertain the status of that mortgagee insurance, and that, if it made any difference in my policy I wanted them to do it, and they said that they would. I told them I would like to have $15,000 if the Murray Company's policies were not in existence, because the property was worth around $20,000, and they said they would look it up.

"The next visit, I remember that Mr. Saunders and Mr. Baldwin both came, and the matter was agreed upon definitely. They brought a blank application and said: 'You are very busy here, you have not the facilities here at the gin'—this was 35 miles away from my clerical office in Las Cruces, and not equipped to do any clerical work there of that character; they said that they would write down the necessary information. They took a piece of blank paper and jotted down the information that they asked of me in order that they might fill out the blank application later. I don't remember which did it, but it was done there at the time I gave them that information. I noticed that the application also stated that the indebtedness was $10,000, secured by a mortgage. That is not correct in that the mortgage indebtedness was two-thirds of the purchase price, which was about $10,000. I mentioned that because it was read into the record in the statement of facts. I owed $10,-000, only about two-thirds of it secured by mortgage on this plant, the balance was otherwise provided for, and did not constitute a mortgage interest against this property, this particular plant. I called attention at the time to the fact that I did not know the exact nature of that original Murray insurance, that it might have been merely to cover the machinery in transit, or might have been some insurance—I was not familiar with the details, I was not familiar with what it was, and told them so, and told them to find out what it was. Well, they wrote the policies; they wrote both policies and delivered them to me, and the situation was

exactly the same in both instances. The two policies were written and delivered to me covering these two plants, and on December 4 this Borderland gin was burned about 1 o'clock in the morning—burned to the ground. In Mr. Saunder's solicitation to me to get this insurance policy in question, about which I have referred, the printed question in the application as to whether there was other insurance was discussed by he and I in connection with this information I gave him. It was agreed between Mr. Saunders and I that I would sign that application in blank, and he would insert the information I had given him in regard to the matter when he got back to the El Paso office where he said he had a typewriter. He said he would find out about the facts of the other insurance. I told him I though whatever insurance Murray Company carried was through Cornwall & Stevens. They were well-known insurance brokers, doing a large business, and generally known by all local companies to be in existence; they carried all of the Murray Gin Company insurance, and that is one of the biggest gin companies in the world. There has been read in evidence here a copy of a letter which was written to me by Murray Company in July, 1924, in which some mention is made about binders or insurance on two or three different plants; I did not have access to that letter when I was giving this information to Mr. Saunders. I received that letter, I presume, shortly after it was written, which was the 2d day of July, and this was early in October, and the letter and all my papers were in my office at Las Cruces, and this was, as I said, at the Borderland gin, thirty-odd miles away, I was just depending on my memory. I did not have a distinct recollection of the details of that letter when I was talking to them, giving them my application, and I told them so. I signed the application in blank for them to take it to El Paso and fill it out. When they turned me over the policy, and I paid the premium, I don't remember ever having it brought to my attention again as to what the application contained in reference to answer to that question, or what information they had gotten about this Murray insurance, until after the fire; then, of course, looking it up, I asked them why it had not been put in. About 8 days later the agents came up there, and I was having a little fire in the gin as happens unfortunately in those cases where cotton is being ginned, especially in this country where it is dry, and they told me: 'You ought to have cotton insurance to protect you against cotton burning while being ginned,' and explained the proposition to me. They said they could insert right in that policy by adding to it another rider, and they sold it to me, and I paid for it. It was by mutual consent on the 16th day of October that this additional rider was added to the policy. I was unable to locate the original letter from the Murray Company of July 2 when I understood that Mr. Senter was going to ask for it, but a copy was requested of the gin company and was secured; that is the first time I have seen that letter written. I made an effort to find the original but failed. I assume that the copy is correct; it came from the gin company. * * *

"I had nothing to do with any insurance that may have been carried or taken out by the Murray Company, and I had no knowledge of it being taken out, nor did I pay for it, or have anything to do with it. There was a provision, I think, subsequently entered in the mortgage to that effect, that the Murray Company should take it out or might take it out in any form, but at the time it was taken out I had no knowledge whatever that it was even to be taken out. Aside from what provision may have been in the mortgage, I had no contract, agreement, or relations with them about that insurance that they might take out, and I never even referred to it in a letter to them after they wrote me about it. All I knew about it was contained in that letter, and that I had forgotten as to what the details were at the time the policy was written. Except in so far as the mortgage which I executed may have something to do with that insurance, I have no concern whatever with that insurance of the Murray Company, know nothing about it, and I was not asked to consent or dissent or anything of the kind; I was not consulted in the question whatever. The chattel mortgage which I gave the Murray Company on this property bears the date July 2, but that was not the date that I actually signed and delivered that instrument; that was the date it was drafted in the Dallas office, and it was either mailed or brought out here, and I signed it and delivered it on the 9th day of July, 1924."

Recross-examination:

"The record shows that the mortgage was filed for registration on the 17th day of July, 1924. I did not file it. (It was admitted by counsel for plaintiff and defendant that the mortgage was filed for registration on the 17th day of July, 1924. It was admitted by counsel for plaintiff and defendant that said mortgage contained the following provision: 'Until the indebtedness herein secured is paid for the said mortgagor agrees to keep the above-described property insured against loss or damage by fire to the full amount obtainable or for the amount of the indebtedness of the Murray Company in some insurance company or companies satisfactory to the trustee named or his successor, and will continue said insurance until the indebtedness herein secured is fully paid, with loss, if any, payable to the Murray Company, or to Bruce Thomas, trustee, as it or his interest may appear, and deliver said policy or policies to said trustee, and, in case the said mortgagor fails so to do, the said Bruce Thomas, trustee, or the Murray Company, may take out such insurance at expense of said mortgagor.')

"I still have unadjusted or unpaid accounts with the Murray Company. I don't know whether they have charged me with Lloyd's on this unpaid account. I don't know that I am subject to be charged with that from my agreement. I signed that agreement. I do not know that Lloyd Company is not authorized to do business in Texas. I do not know where the brokers, Cornwall & Stevens, live. I don't know that they are alive. I know there is a firm by that name, but who they are composed of—I think they are a well-known firm. * * *"

Henry Baldwin, connected with Coles Bros. & Saunders testified:

"I am connected with the firm of Coles Bros. & Saunders, and was at the time of the issuance of the policy sued on. I took part in the ne-

gotiations prior to the issuance of this policy. I saw Mr. Sutherland several times, I don't remember how many times. I followed the matter up to the issuance of the policy. Mr. Saunders and I together were the representatives of Coles Bros. & Saunders in dealing with the matter. I was the first man that went to see Mr. Sutherland. Mr. Sutherland told me the first time I talked with him about it that the Murray Company had $7,750 insurance on the property; he mentioned the letter, and he said he did not have it with him. The conversation we had was on top of the rack out there where they ran the seed out to some bin; we were on top of the binds; he did not have the letter with him, but he told me that the Murray Company said something to him about haying a binder on it, but when we refer to binders in insurance terms we naturally refer to binders as temporary insurance. I did not go into details, whether it was permanent insurance or whether temporary insurance until he got the gin completed. Mr. Sutherland just mentioned about having this, that they had said something to him about a binder, but I did not follow it up to find out about it; I did not write Dallas or the Murray Company to find out whether permanent insurance or not, I did not know. I know about these people in New York, Cornwall & Stevens; I know there is such a concern there; I understand now from what I found out since this came up that they write all of Murray's business, I did not know it beforehand. I have learned that since the fire. I do not know whether Lloyd's is admitted to do business in Texas; I have never investigated to see. * * *

"I remember that Mr. Sutherland mentioned to me that Murray Company held a mortgage on his ginning plant. He said he had a letter at Cruces, or I believe he said: 'I have got a letter up at my office stating they were covering their mortgagee interest.' I refer to the mortgagee's interest of the concern. He did not seem to have a distinct idea about the matter; he said he had a letter saying something about insurance; that it was necessary for him to take out his own insurance; they wanted him to take out his own insurance. I think they wrote him a letter to that effect."

The appellant urges upon this appeal, in substance, the following points:

(1) That the policy was void for false representations in the application that there was no other insurance upon the subject-matter; appellant claiming that the Lloyd's policy was other insurance.

(2) That there was a breach of the condition in the policy providing against other concurrent insurance making the policy void in the event the insured carried other insurance; appellant claiming that the Lloyd's policy carried by Murray Company was other insurance which breached this warranty clause in the policy.

(3) Appellant claims that plaintiff should not recover the full amount because of the clause in the policy which provides that, if there is other concurrent insurance, the present policy should only stand its pro rata part, claiming that the Lloyd's insurance is other concurrent insurance, and that the amount of same, about $7,500, should be taken into estimate in measuring the amount of liability under the present policy, which is for $10,000.

[1, 2] 1. The first contention that the policy is void because of false representations is answered by the proposition that appellee notified appellant's agents, who had full authority to issue the policy, as to the condition of the Lloyd's insurance, so that this agency knew as much as appellee did, and not only this, but this agency promised to ascertain the full condition of the Lloyd's policy. Therefore, under our decisions, such a contention is clearly without merit. Wagner v. Ins. Co., 92 Tex. 549, 50 S. W. 569; Morrison v. Ins. Co., 69 Tex. 353, 6 S. W. 605, 5 Am. St. Rep. 63; Ins. Co. v. Ende, 65 Tex. 123.

Upon this phase of the case appellant strongly relies upon Insurance Co. v. Richbourg (Tex. Com. App.) 257 S. W. 1089, by the Commission of Appeals, but that case is not in point for the reason, among others, that the local agent did not have the general authority possessed by the agents who in the present case acted for appellant with respect to the contract sued upon.

Under the two cases first above cited, and the agreed facts as to the authority of appellant's local agents, such agents stand in the place of the appellant itself, and whatever knowledge they possessed with respect to the additional insurance was the knowledge of the appellee.

These agents were advised by Sutherland that the Murray Company had taken out some character of insurance upon the machinery but he did not know its exact nature or whether it was still in force, and at the agent's own suggestion the application was signed in blank; the agents undertaking to ascertain the true facts and fill in the application in accordance therewith. They made no pretense of complying with their agreement to ascertain the true facts, but returned to their office and made the answers to the questions upon which the appellant now seeks to avoid the policy. In our opinion the cases cited clearly establish that under these circumstances the appellant cannot repudiate its liability under the policy by reason of the incorrectness of the representation and warranty against other insurance.

[3, 4] 2. The policy provides:

"This entire policy, unless otherwise provided by agreement indorsed hereon, or added hereto, shall be void if the *insured* now has or shall hereafter make or procure any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy."

It is contended that this clause was violated by the Lloyd's policy taken out by the Murray Company. It is well settled in this state that provisions selected by the insurer and inserted in its policies, which go to defeat, diminish, or forfeit the insurance, will be con-

strued strictly against the insurer, so that such defense is not available unless the plain language, or the obvious spirit of the defeasance clause is clearly made out under the facts. Dumphy v. Ins. Co., 107 Tex. 107, 174 S. W. 814, and cases there cited; Brown v Ins. Co., 89 Tex. 590, 35 S. W. 1060; International, etc., v. Gunther (Tex. Civ. App.) 269 S. W. 507, and cases there cited.

It will be noticed that the language quoted only invalidates the policy if the "insured" had or procures other insurance. This language cannot be extended to include a policy, taken out by a mortgagee in his own independent right as his indemnity, to which the mortgagor is in no way a party, and which can in no way inure to the benefit of the mortgagor.

In 2 Cooley's Briefs on Insurance, 1449, it is said:

"Consequently a policy is not avoided by prior insurance taken out by others than insured and on a different interest, as such prior insurance does not constitute other insurance within the meaning of the usual condition of the policy in regard thereto [citing authorities]. The rule stated applies to insurance effected by a mortgagor or mortgagee, or a vendor or vendee, on his individual interest."

See, also, the following: 4 Joyce on Ins. (2d Ed.) § 2470; Gould v. Ins. Co., 114 Me. 416, 96 A. 732, L. R. A. 1917A, 604, and note; Home, etc., Ins. Co. v. Koob, 113 Ky. 360, 68 S. W. 453, 58 L. R. A. 58, 101 Am. St. Rep. 354; Guest v. Ins. Co., 66 Mich. 98, 33 N. W. 31; Carpenter v. Ins. Co., 61 Mich. 635, 28 N. W. 749; Hall v. Ins. Co., 90 Mich. 403, 51 N. W. 524; Hackett v. Cash, 196 Ala. 403, 72 So. 52; Cannon v. Ins. Co., 49 La. Ann. 1367, 22 So. 387; Doran v. Ins. Co., 86 N. Y. 635; Church v. Ins. Co., 54 Minn. 162, 55 N. W. 909; Harvey v. Ins. Co., 250 Mass. 164, 145 N. E. 35; Wheeler v. Ins. Co., 131 Mass. 1; Humble v. Ins. Co., 85 Kan. 140, 116 P. 472, Ann. Cas. 1912D, 630, and note; Kelley v. Ins. Co., 262 Ill. 158, 104 N. E. 188, 50 L. R. A. (N. S.) 1164; Ginners, etc., Ins. Co. v. Wiley (Tex. Civ. App.) 147 S. W. 629; Dumphy v. Ins. Co., 107 Tex. 107, 174 S. W. 814; De Shields v. Ins. Co., 125 S. C. 457, 118 S. E. 817; 26 C. J. 264; Collins v. Ins. Co., 184 Iowa, 747, 169 N. W. 199.

In this connection it should be borne in mind that the insurance procured by the Murray Gin Company did not inure to the benefit of appellee.

The rule is thus stated in 4 Cooley, Briefs on Ins. 3915:

"It is a general rule that, where the interest of a mortgagee is separately insured for, his own benefit, and a loss occurs before payment of the mortgage, the underwriters are bound to pay the amount of such debt to the mortgagee, providing it does not exceed the insurance, and are thereupon entitled to an assignment of the debt from the mortgagee, and may recover the same from the mortgagor. The

payment of the insurance by the underwriter does not, in such a case, discharge the mortgagor from the debt, but only changes the creditor."

See, also, 5 Joyce on Ins. (2d Ed.) § 3563; 27 Am. & Eng. Ency. Law (2d Ed.) 263. So far as we are advised, the only authority to the contrary of this rule is by the Massachusetts courts.

[5, 6] But it is claimed by the defendant that the insurance taken out by the Murray Company was binding upon plaintiff because he had executed a chattel mortgage to that company upon the gin machinery to secure the purchase money, and that this constituted the Murray Company the agent of plaintiff in procuring the Lloyd's policy. The clause in the mortgage reads as follows:

"Until the indebtedness herein secured is paid, the said mortgagor agrees to keep the above-described property insured against loss or damage by fire, to the full amount obtainable, or for the amount of the indebtedness of the Murray Company in some insurance company or companies satisfactory to the trustee named, or his successor, and will continue said insurance until the debt herein secured is fully paid, with loss, if any, payable to the Murray Company or to Bruce Thomas, trustee, as its or his interest may appear, and to deliver said policy or policies to said trustee, and in case the said mortgagor fails so to do, the said Bruce Thomas, trustee, or the Murray Company, may take out such insurance at the expense of said mortgagor."

It will be noticed that the last words in the above quotation are that the Murray Company may take out "such insurance." The word "such" there used refers back to the kind of insurance authorized in the above quotation, that insurance means the policy issued to mortgagor, as the insured, with the loss clause payable to mortgagee, as its interest may appear. This would not be authority for the Murray Company to take out insurance to itself as the insured, and protecting only its mortgagee interest. Under the above clause, if the mortgagee should take out insurance on its own interest, the same could not be charged against the mortgagor. It does not appear that the mortgagee undertook to act under said clause, or on behalf of the mortgagor under any supposed authority conferred by the mortgage. The proof shows that, while this mortgage bears date July 2, it was not in fact executed until July 9. The letter from the Murray Company bearing date July 2 recites the fact that such company had already taken out mortgagee insurance for itself at some time prior thereto. The appellee may here again invoke the rule that such effort to defeat the insurance is construed most strictly against the insurance company. It was not within the right or power, nor it might be said, the concern, of mortgagor what character of indemnity the mortgagee might purchase for its own bene-

fit. Such indemnity could in no event inure to the benefit of mortgagor. The company having sold the property to Sutherland, it was even beyond his power to say what indemnity the seller, the Murray Company, might choose to contract for as security for its lien. So long as a person has an insurable interest in property, he may insure the property in whatever amount he desires, and in as many companies as he desires, so long as he can find companies who will issue such policies. He is not restricted to insuring for the value of the property. The clause in the chattel mortgage did not make the Murray Company agent for the plaintiff in the matter of securing the "Lloyds" insurance, nor was notice to that company notice to plaintiff. De Shields v. Ins. Co., 125 S. C. 457, 118 S. E. 817.

The appellant knew before it issued the policy that the Murray Company had taken out some form of mortgage indemnity. There is nothing to show that Sutherland had anything to do with such insurance, nor was he a beneficiary thereunder. The defendant issued the policy in question to Sutherland with knowledge of these facts. Under such state of facts the insurance that was carried by the mortgagee was of no concern to mortgagor in this suit.

It is most likely that the Lloyd's policy carried by the mortgagor had a subrogation clause, so that when it paid the Murray Company it would be subrogated to that company's debt against Sutherland. The evidence does not show that Sutherland is in any way a beneficiary under the Lloyd's policy, either directly or indirectly. While it is agreed that the Murray Company has released its chattel mortgage which it held against Sutherland, yet it is not proven that it has released its debt against him. The release of the chattel mortgage was only a matter of form, since the property upon which it existed was destroyed by fire. The release of such mortgage was no doubt intended to enable Sutherland to prosecute this suit in his own name, without making the Murray Company a party. That is a matter of pure form, and negotiations between Sutherland and the Murray Company, in which the defendant has no interest. This matter appears in the last paragraph of the agreed facts, which reads:

"After destruction of the above-described gin plant by fire, Lloyd's, New York, paid to the Murray Company on the policy which was issued to it as mortgagee covering only its mortgagee interest, $7,364.49, and said Murray Company released its mortgage on said property, and now makes no claim under the policy sued on."

But for such agreement or some other showing, it would have been necessary to join the Murray Company in this suit. If the Murray Company preferred not to be a party

278 S.W.—58

to the suit, and preferred to waive the loss payable clause to it in the policy in question, that was a matter of negotiations between the Murray Company and the plaintiff, who are friendly so far as this record shows. Such action has not prejudiced the appellant; nor should it reap any benefit therefrom.

[7] It was the duty of the plaintiff to show that, when the appellant has had to pay him this policy in question, the defendant may not also be called upon to pay the Murray Company for the same loss by reason of the loss clause in its favor inserted in the policy. The Murray Company has complied with that duty, and there is nothing left to defendant but to pay its obligation, since it has issued its policy for value received, with full knowledge of all of the facts, and is in no danger of having to pay for the second time to the Murray Company.

3. The defendant seeks to have the benefit of Lloyd's policy and have the court hold such policy to be concurrent insurance, thereby inuring to the benefit of appellant under the printed paragraph of the policy which, so far as material, reads as follows:

"This company shall not be liable under this policy for a greater proportion of any loss on the described property * * * than the amount thereby insured shall bear to the whole insurance, whether valid or not, or by solvent or insolvent insurers, *covering such property*, and the extent of the application of the insurance under this policy or contribution to be made by this company in case of loss may be provided for by agreement or condition written hereon or attached or appended hereto."

The application for policy contains these provisions:

"$10,000 total concurrent insurance to be permitted, including the policy now applied for."

"It is agreed that any loss or damage ascertained and proven to be due under the policy shall be held payable to the Murray Company as its interest may appear, subject, however, to all the terms and conditions of the policy."

"It is agreed that in the event of loss or damage to the property insured under this policy, this company shall not be liable for an amount greater than three-fourths of the actual cash value of each item of the property insured by this policy; and, in the event of additional insurance—*if any is permitted hereon*—then this company shall be liable for its proportion only of three-fourths of such cash value of each item insured. * * *"

The policy contains the same provisions. The policy contains this provision:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if the insured now has or shall hereafter make or procure any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy. * * *"

The policy contains this provision:

"This company shall not be liable under this policy for a greater proportion of any loss on

the described property, or for loss by and expense of removal from premises endangered by fire than the amount hereby insured shall bear to the whole insurance, whether valid or not, or by solvent or insolvent insurers, covering such property, and the extent of the application of the insurance under this policy or of the contribution to be made by this company in case of loss, may be provided for by agreement or condition written hereon or attached or appended hereto."

The rule of strict construction against the insurer may be here again invoked by appellee, but without such rule even the clause does not indicate upon its face anything other than, if the insurer carried other concurrent insurance, then the loss should be prorated, etc. In this case there was no concurrent insurance. The policy is there dealing with the interest in the property owned by the mortgagor. It there refers to the property as his property. Such language cannot be extended to cover a mere lien to secure purchase money held by the Murray Company.

[8-11] It is well settled in this state that the mortgagor owns the legal title, especially where possession had been delivered. It would be manifestly unjust and something without the intention of the parties, if the defendant could reduce its liability by an indemnity contract of the mortgagee, for its own interest, and which could in no way inure to the benefit of the plaintiff. We may here repeat and add as a corollary of what has already been said that the fact that the mortgagee took out indemnity with the Lloyd's for which it paid, and which policy it collected, does not inure to the benefit of Sutherland nor discharge the debt which he owes to the Murray Company. Sutherland must still pay such debt, either to the Murray Company or to the Lloyd's, depending perhaps upon whether the Lloyd's policy gave that company a subrogation clause. The burden of the proof was on appellant to show such other insurance as to avoid or diminish the policy in question. Norwich Union Fire Ins. Soc. v. Cheaney, 61 Tex. Civ. App. 220, 128 S. W. 1163; Ginners, etc., v. Wiley & House. (Tex. Civ. App.) 147 S. W. 629; De Shields v. Ins. Co., 125 S. C. 457, 118 S. E. 817.

The provision in the policy referring to other concurrent insurance "if any be permitted thereon," and the other provision prohibiting other concurrent insurance, constitute language which shows that the intention of the contracting parties did not have in mind the Lloyd's indemnity policy when using the language elsewhere found in the policy providing for prorating the loss with other concurrent insurance. This latter language referred to, to wit, the provision for apportioning the loss with other insurance companies, using the language "covering such property," clearly means insurance that did cover the property as distinguished from insurance that only covered a lien against the property. By no reasonable construction can it be said that the Lloyd's policy, only covering a lienholder's right, could be classed as concurrent insurance.

We are of the opinion there was no concurrent or additional insurance upon appellee's property within the meaning of the policy; hence the measure of appellant's liability is not in any wise affected by the payment of the Lloyd policy to the Murray Gin Company. Upon the views expressed in disposing of the appellant's main contention, it follows that its assignments relating to the admission of Sutherland's testimony are without merit.

Affirmed.